I'm Justice Sharon O. Johnson. I'll be presiding today. I'm joined by my colleagues, Justice David Navarro and Justice Raymond Mitchell. Both sides will be given 20 minutes in which to present their arguments, with the appellant having the opportunity to reserve time for rebuttal. The appellant, you may approach. Good morning, Your Honors. Robert Smeltzer, on behalf of appellant Dr. Malcolm Herzog. I'll also be arguing on behalf of the other appellants, Drs. Simansky and Garofalos. With me is co-counsel for those latter two appellants, Mr. Richard Stack. And if it pleases the Court, I'd like to reserve five minutes of my opening 20 minutes for Mr. Stack to address the Court. Very well. And I'm just going to ask you to raise the level of your voice a little bit more. Thank you. Sure. I proceed, Your Honor. You may proceed. Thank you. This is an appeal of several orders in a long, convoluted, underlying case that actually involves fairly straightforward issues of law before you today. The first of those issues, which is subject to a de novo standard, is whether the trial court had jurisdiction to hear an action for piercing the corporate veil. Well, let me ask you about that. I know you framed it as one of jurisdiction, but cases really don't frame them as that. Circuit courts in Illinois are courts of general jurisdiction, which means that unless you have a statute or a constitutional provision that says that the circuit court lacks jurisdiction, it necessarily has jurisdiction. So it seemed to me, really, it was really a question of whether this proceeding was authorized by the supplementary proceeding statute, not one of jurisdiction. I would say it is both, Your Honor, but primarily jurisdictional, because in the Paisios case that we cited in our briefs, it explicitly said that the trial court did not have the power to hear or ability, which I look at as jurisdictional, to hear the citation proceedings because the statute authorizing the cause of action, which is 214.02, the supplementary proceedings in Supreme Court Rule 277, are limited to those issues. When a circuit court takes an action that is ultra viris, that may be an action without authority, it doesn't mean the circuit court lacks jurisdiction. I think you could look at it both ways. For instance, the case we cited in the Res Judicata, when it treated a ruling in the supplementary proceedings, the finding in the supplementary proceedings of piercing the corporate bail to have no Res Judicata effect whatsoever. So I interpret that almost as a quasi-jurisdictional ominous ruling out of the issue. Right. That was the one case that I thought came, I agree, came the closest to characterizing this jurisdiction. Yeah. So I think you could look at it either way and still get to the same result. It's that the trial court had no business hearing a citation, I'm sorry, the piercing the corporate bail cause of action, which is a separate cause of action. Why wouldn't they? So as I understand it, there was something styled as a complaint filed in the supplementary proceedings. You had an opportunity to move to dismiss that. You had an opportunity to answer that. You had an opportunity to take discovery. And you had an opportunity to litigate. So how in the world were you prejudiced? Well, we did have an opportunity over objections. Those jurisdictional or quasi-authority objections were raised as soon as that counterclaim was brought in the supplementary evidence. And so it's not, but certainly we objected at the time. Yes, we had the opportunity to have evidence, but we were prejudiced by among other things. Generally, we don't reverse unless an error had prejudiced you in some way. Right. The very same result could have been obtained here had the folks on the other side actually filed a complaint in the chancery division, made a motion to transfer to Judge Meyerson as a related case, and it would have proceeded exactly as it proceeded here. Right? Yes, except it would have been a separate action. It wouldn't have been an action before the same judge who had overseen six or seven years of... But nevertheless, in a circuit court. Yes. You're just saying not that particular judge, but still in a circuit court which gives... It could have been transferred to the judge as a related case. Yes, but it should have been commenced, service, refiling as a new action in the Paisios case and the minor case absolutely stand for that proposition. And the idea, I think, behind it, the why of it is not only are they prejudiced because they're deprived of a jury trial... Well, you don't get a jury in a piercing, broker, bail. You don't get a jury. That's an equitable action. Right? It's an equitable remedy. Well, I think it's an action outlaw that's quasi-equitable in nature. Is there anything that keeps the appellee from refiling this complaint in a separate action? Completely separate case number, just kind of starting over on a piercing of corporate bail? Yes. No, nothing. Paisios, except perhaps we have to look at statute of limitations, but Paisios says dismissal and remand, and if they want to refile and start a new action, they can. But Paisios remands for a hearing or further proceedings on the transfer of assets. That's what they end up doing in Paisios, right? Well, in the sense that there were... Actually, I'm not sure about that, Your Honor. Let me... I've got it right here. It was absolutely remanded. So they didn't reverse the decision of the trial court and remanded for further proceedings consistent with this opinion, which I would take as dismissal of the action for refiling and reservice. And in that instance, the purpose of the supplementary proceedings is further, because the supplementary proceedings are supposed to be expeditious proceedings where there's only two issues. Does the judgment debtor have assets or income that can be used to satisfy the judgment, or does a third party have income and assets? Those are the only two questions that are supposed to, by statute, it's a plain reading of the statute. Paisios and Meyer support that. Those are the only two issues that a court hearing a supplementary proceeding is supposed to take up. And when they don't, it's dismissed and reviled. I find it interesting that you use the word expeditious, because this has been going on for 15 years. Yes, there's many reasons for that. There's all sorts of actions taken by the judgment creditor to try to get beyond a lien that Bridgeview Bank had in the assets of the original judgment debtor, P&S. There were motions to terminate proceedings. There were all sorts of citation respondents. So a lot of this was engendered not by the original debtors. And there's a bankruptcy as well. But at some point, isn't it your client, someone from either your client or a sex client is held in contempt, right? There's a rule to show cause. That's not the appellees on the rule. It was your clients on the rule? Correct. I'm for failing to comply with the citation. With the separation. Okay. So it does seem that you said it framed as an appellee issue. And it does seem like there has been, at least, can some of the delay be attributed to your client? Absolutely. There's a myriad of things, procedural things, that really elongated it. The bankruptcy was one of them. The lien issue was one of them. Motions for turnover orders. Citations expiring, et cetera. Motions to revive judgments. All kinds of things. So absolutely, it was not expeditious. But in the end, it's the Ms. Lockwood attempting to get the money that was awarded to her at the initial hearing. That's what's going on. Yes. So if this is stretched out, it's because she's attempting to pursue the award that was originally given in 2010, 2011? Yes, 2010. Okay. All right. Yes, absolutely. What was the down amount of that award? The original award, what was the down amount? I think it was $310-and-some-odd-thousand, which was comprised of $200,000 plus $100,000 in attorney's fees in the Chicago Commission on Human Relations. Then the judgment was revised after appellants sought with the circuit court. You go from the Chicago Commission to the circuit court. And then when the circuit court affirmed that, then there was also an appeal of that to this court, which also affirmed the circuit court's judgment of the original. In a practical manner, it's cheaper to pay lawyers for 15 years rather than try to work out the judgment? Well, Your Honor, again, the judgment is against a company that declared bankruptcy and was discharged and then dissolved. So a lot of this happens because of the insolvency and bankruptcy of P&S. And then I understand if you were the judgment creditor, you've got a choice to make. We've all been there, litigators. We've all gotten judgments that were unclinical. And yes, supplementary proceedings are supposed to be expeditious. That's why you have citations expiring automatically after six months. They're not supposed to go on forever. But, you know, it's supposed to be expeditious in that regard. And in this case, every judgment creditor has to make a call. When is the time to stop sending good money after bad, as does any judgment creditor? This judgment creditor declared bankruptcy. Justice argues in her brief that as an alternative basis for affirmances, and Justice Johnson alluded to this, is that there are allegations of simple asset tracing, that there were improper asset transfers. So that's property of the judgment debtor in the possession of a third party. That's classic supplementary proceedings. Yes, and Appley abandoned that course. In fact, they could have identified and they tried to identify assets that were actually of P&S, the judgment debtor, that were in the hands of one of the three officers, the appellants, and didn't. But Pyshos remands for that. As I read that case, that's one of the things the court does. They say, well, to the extent there's allegations of just simple asset tracing, we're going to remand for you to sort that out. And I think that was pursued prior to 2017, where this amendment for the first time came up. There was a motion for revival of judgment because the judgment debtor had expired. And then this counterclaim is filed. I think at that point when the counterclaim is filed, if you look at the counterclaim, this is the piercing the corporate bail cause of action, and then it was later amended. There's nothing in that counterclaim that identifies any asset in the possession of the three new putative counter defendants, appellants. There's nothing in that petition, that amended counterclaim, whatever you want to call it, that is within the ambit of 214.02. Because it doesn't identify any assets that were subject to turnover in our client's possession, custody, or control. In fact, why would you even take on the, if you had identified assets that were in the possession of these three officers as citation respondents, you would get a turnover order. There would be no reason to take on the higher order. If the assets were less than the treasurer amount, you would want the personal liability of the. Sure, but there were no assets identified, let alone turned over from the individuals. They were all citation respondents. They weren't a judgment debtor until after the trial, and we contend that that was wrong. But yeah, they were all citation respondents. So even if there's a remand, we can start citation proceedings over, what are we, 12, 13 years after the fact and see if there's any assets now. But if there weren't prior to the filing of the amended counterclaim, then presumably there won't be now, but that's neither here nor there. Because that's already been, I mean, you could do that if you wanted to, but I think it would be a waste of time. They're entitled to do that if they want. They're just not entitled to use the limited scope of a 214-214-02 proceeding to come up with new theories that ought to have been articulated maybe at the commencement of the suit. There's plenty of times as a litigator for 33 years that I've sued a corporation, and when I was worried about the insolvency of the corporation, included some or more officers, when I have a good faith belief, to believe that they were mere alter egos of the corporation. I've done that from the get-go. Here that wasn't done until a full seven years. Well, aren't those claims often dismissed as premature? Because you're saying that before you even have a judgment, you would bring a bail-piercing claim? You don't even know if the judgment's collectible. Absolutely. If I've got good faith reason to believe, particularly in a close corporation where there's a few shareholders, that because my client used to be a member of the close corporation, et cetera, I know that there's been some sale of assets recently with respect to the corporation or the LLC. I've done that several times, name alter egos in an alter ego claim, a piercing the corporate bail claim, in addition just to be anticipating some of those issues. Counsel, you're running out of time, but I'd like to give you a couple minutes to address your attorney's fee argument. Yes. Keeping in mind that you do have five minutes for rebuttal remaining. Yes. The American rule is pretty clear. No attorney's fees are permissible against a losing party unless there's a statute or a contract. The only statute we have here is the ordinance and then the related rule of the Commission on Human Relations that awards fees only for pursuing the complaint. The language is very clear, only for pursuing complaint or any actions in a reviewing court, reviewing the original commission award. It's very, very circumspect. The only review of that award was the writ of cert to the circuit court, and then once that was affirmed, then the appeal. That's the only review of the substantive decision. What does reviewing court mean in the context of the statute? The plain meaning is, again, it's plain to me. It's a court that is reviewing the substantive propriety of the underlying judgment in the way that it was obtained, either the right to it or the amount to it. In no way, shape, or form is the separate citation proceeding, which is a new proceeding. It's an entirely new proceeding. You have to serve the citation. 1402 says it's a new proceeding. It has to be commenced as a new proceeding. In no sense is the supplementary proceeding any kind of review of the Chicago Commission on Human Relations award. The same is true of the improperly filed amended counterclaim for piercing the corporate bail. At no time are they discussing the award. Again, in 21402, all they're trying to find out is the judgment debtor, P&S, have any assets, or does any third party, such as our clients as citation respondents, have any assets belonging to the judgment creditor? If they do, you go for a turnover award. Was the judgment here stayed? No. It was not. In fact, citation proceedings were commenced, separate proceedings were commenced, while the review process was going on. So there would be nothing keeping the judgment creditor right now from seeking to enforce their judgment? Except for, well, if you deem the judgment revived, then probably revive the note, because we're still within the 20 years. But as is set forth in our appeal, that we don't believe that the original judgment was properly revised and it expired after seven years. But going back with respect to the attorney's fees, nothing was incurred after the appellate court decision back in 2011, I believe. No fees were incurred on anything other than the supplementary proceedings and then the complaint to Pierce, the corporate bail. It's clear that under 1402, you do not get your attorney's fees for citation proceedings. There's nothing in that statute, and there's no case law.  Yeah, just costs. Nothing would grant you your attorney's fees. The same is true with the bail piercing action, unless, in the one case which escapes me, unless the underlying contract involved in the bail piercing, it was that construction case, has an attorney's fee provision. In that case, there was a contract to build a house between some purchasers and a construction company. The allegations, it wasn't even 214, okay, 1402 case. The allegations were that an individual non-shareholder was the alter ego of that particular company. And because the company had entered into a contract with the purchasers that had an attorney's fees clause, after piercing the corporate bail, the idea is, well, if you are the corporation and the corporation is you, then you consented to this attorney's fees provision. Nothing at all is like that here. So what we're doing is we're shoehorning in a very limited, finite statute. It's not like the ERISA cases in 1988, civil rights cases cited by Applebee's, which is broad discretion and even talks about attorney's fees in enforcing the judgment. They actually use the word enforcing in those statutes. Nothing like that here. It says in pursuing the complaint and any fees incurred in reviewing the court of review, reviewing the original judgment. Let's also talk about paper victory, right? And if we're talking about a paper victory and talking about a case that began in 2010, final orders June of 22, May of 23, this case, final orders June of 22, May of 23, August of 23. Even if we agree to the point that this is bail piercing actions, there was also this discussion of transfer of assets during those same proceedings. And if we, let me ask you, if we call these, if we call that a hearing on the transfer of assets, is it still the same argument? You can't recover, you wouldn't be entitled to recover fees on an asset transfer? Well, I don't think that there was any finding, even in the improper bail piercing action, that identifiable assets of P&S had been transferred. Right, right. Ultimately the finding was on a bail piercing claim. Right. But if there had been, would they be entitled to fees on that? That's a good question. I think if they had filed a different amended counterclaim that included that, as well as a claim to turn over identifiable assets, then perhaps. Okay. But that's not what happened. How is that fair with your argument that you say the ordinance is limited to litigating the complaint and stage of judicial review. You say nothing that happens in supplementary proceedings. That's what you just said a minute ago. Well, I thought we were talking about two different things. I was talking about attorney's fees statute.  And then. Then the question is, I think if I understand my colleague and friend's question, would they be entitled to attorney's fees on a simple asset tracing claim? Improper transfer. No, no. That would be under 214.02, and clearly the statute does not permit that. I'm sorry I misconstrued your question. What did you understand my question to be? Because I thought I heard my question as Justice Mitchell's question. I'm the odd person out. I'm the only one that didn't get it. I thought we were sort of going back to if you had continued in the supplementary proceedings to say, hey, I've identified, I traced assets in this. Would that have been, even though it was sort of related to this improper bail piercing claim, it's kind of a separate claim. Would that have been valid to issue a turnover? That's completely got out of the attorney's fees context. I apologize. Okay. Thank you very much. You still have five minutes for rebuttal. Thank you. Good morning. Good morning. Could I please report? Please state your appearance for the record. Ruth Major on behalf of Dean Lockwood at the Lee. Your Honors, it was 19 years ago in 2006 when Ms. Lockwood called in to work because her daughter had conjunctivitis. Her employment was terminated. She's pursued her claim through many, many obstacles through the years. At one point, we had one of the appellants actually brought into court by the sheriff in handcuffs on a body attachment, which I, in my 35-year career, have never seen, ever. It was unbelievable. At that court hearing, it was to me like yesterday, the Judge Mason ordered the appellant to sit for a citation to discover assets. We set a specific date, late in the day, the day before they filed for bankruptcy. I know we provided a lot of details about things not disclosed, no documentation, things that don't make sense. Counsel has taken a very, very narrow view of what is allowed in the supplemental proceedings. There's nothing in the statute that says you cannot bring an action to pierce the corporate veil. The statute requires that the party, the judgment creditor, be seeking to identify if there's assets that were taken from the judgment debtor that are in the hands of a third party, and then to get those assets. In this case, there's nothing about piercing the corporate veil in the statute, whether you can or can't. Where the courts have come down negatively on piercing the corporate veil issues is where the party is piercing the corporate veil solely on the failure to follow the corporate formalities, where there is no allegation that there are assets that have been taken. As we know, an action to pierce the corporate veil has a number of factors. Some of those factors deal with self-dealing, taking fraudulent conveyance-type conduct, the kind of conduct where we can see that assets are being improperly taken. Proof of improper asset transfers can be proof that would support a claim of veil piercing. But there's just no question that your amended counterclaim was framed as one of veil piercing. What was tried was a veil-piercing theory. And sure, there could be evidence of asset improper transfers that would certainly be inconsistent with disregarding corporate formalities. But I just don't see how we get around Peixos, which dealt with something very similar, which said, okay, well, there's some asset transfers here which would fit within the traditional asset-tracing mission of supplementary and citation proceedings. But veil-piercing, if you're going to try to pursue that, that has to be done separately. So I'm inviting her to square with it. I don't believe, if you look at the cases that we've cited to, Peixos is distinguished from O'Connell, and Lange is distinguished from O'Connell because there were no assets. The same with the minor case. There were no allegations of the improper taking of assets in those cases. Where there are allegations. But didn't Peixos remand for the purpose of ‑‑ I didn't bring my copy of the case with me. Shame on me. But I thought my recollection was they remanded that aspect for the circuit court then to hash out that aspect of the improper transfers. Your Honor, I do believe that my recollection is that the appellate courts in Illinois have distinguished O'Connell where there was a proceeding, supplemental proceeding to get the assets from the corporation. And in other cases, for example, we cited to Federal Insurance Company versus Maritime, which was another case where I think appellant actually conceded that that was a case that involved an alter ego theory where there were assets. That's still good law. That's from 1978. That's a first district decision. That predates ‑‑ we're talking about Peixos forward. There's no question that there are older cases where Illinois courts did allow bail piercing in supplementary proceedings. But then Peixos comes along and changes the landscape. And in the decades since, it's just not been allowed. I believe, Your Honor, that, for example, in ‑‑ Your Honor, just for example, in Gulfwood, this is just a case that was after Peixos.  The Gulfwood course distinguishes O'Connell from Lange, specifically in that case, because O'Connell involved the judgment creditor trying to get the assets in the proceeding. So I just ‑‑ I think that that is the theme that, if not 100% consistently, is by and large the way the courts have viewed these issues. Now ‑‑ oh, sorry. It seems that they're distinguishing between a third party having possession versus piercing the corporate bail. I understand that you want to pierce the corporate bail in order to either determine or establish that, you know, that party has possession. But in those cases, you know, they go straightforward as opposed to going through the piercing the corporate bail. Well, it's piercing the corporate bail. In effect, what we're being told in a way by Appellant is we prove too much. Okay? We prove what's in all these cases. Some of them are based on breach of fiduciary duty theories. Some of them are based on fraudulent conveyance theories. Some of them are ‑‑ they're all, in all these cases, it's improper conduct by the owners of the business who are taking the assets. Now, we have alleged in our complaint, paragraph 47, we allege that the appellants intentionally dissipated and diverted the assets of P&S for the benefits of themselves and contrary to the interests of the creditors. In paragraph 28, we allege that they engaged in perpetration of fraud or deception as they had diverted all of the valuable assets out of P&S. That was in our complaint. And through discovery, we were able to get the evidence that supported it. Now, so you know where the assets went. Well, let me say this. This is like another point that appellants make that I don't believe is supported by the law. What they did was they took money. Okay? That's the asset. They took money out of P&S, and then they used it to buy their own personal whatever it was. We're talking about process. Procedure. So I think we all know that when you attempted to get the money, it wasn't there. Okay? That's to put it nicely. But process here. So why didn't you just allege that these third parties now have the assets as opposed to kind of going around the, as they used to say, the mulberry bush, through the piercing the corporate veil, and then trying to kind of bootstrap the collections or the enforcement to that? I think it's essentially the, I think it's the same thing. We brought a theory that, and the core of this theory was that the assets were taken, money was taken from P&S improperly, and then they used it for whatever. It doesn't even matter at this stage. Okay? They used it for whatever. Counsel keeps saying we have to come up with identifiable assets. They say that over and over again. That's not what's required under Illinois law. If they took money, okay, from P&S, money is fungible. Money is money. We don't have to go and show, oh, these are the $100 bills. Alice, yes, we have a practical question. You've had a judgment, a personal judgment based on veil piercing against these folks since August of 2023. Right. And you still haven't collected them? Actually, I have counsel with me, Mr. Tiplinski, Howard Tiplinski. He is doing just that. He's standing well enough. And he is. And believe me, he's got sent. Okay? He's got sent. He is doing just that very aggressively. And we have collected some money. We've collected some. And we're going after them. Okay? So let me ask this. So in this world, between assets that were improperly transferred, that would be quantified in what amount? Well, I have a whole list here. I mean, totally. Is it greater than the amount of the judgment? It is. And interest in an attorney's fees? It is. Well, it appears that with the interest and, you know, from the time they took the money and all that, because it's been years since they took the money, we believe it is. So you really wouldn't need a veil piercing claim. An asset tracing claim would allow you if the assets are sufficient. Well, I think the first issue, though, is do they have, did they take assets? And that's what the veil piercing was for, to show they took assets. They took assets from P&S. The next step is, okay, where are their assets and let's get them. And that's what's going on right now. This case wasn't about where are the assets now. It was about did they take the assets. Did they take P&S's assets improperly? Okay? And we brought, they took a $350,000 yacht that wasn't even used for the, I mean, the sales people didn't even go on it. The customers didn't go on it. Yacht memberships, payment of personal credit cards, a loan. And then they booked loans from businesses that were defunct that they supposedly received. I mean, there was so much that came out. And the main focus of that action to pierce the corporate veil was on them taking money over and over and over again from this business. And that was the main. And that's what supplemental proceedings are about. The one point is you have to say do they have the assets. Did they take the assets from the judgment? And I guess it goes back to Ms. Major. It goes back to them in Paisos where they said can't pierce the corporate veil in a supplementary proceeding, but we're going to remand it back for a hearing on this transfer of assets. And if it's one way around the bush or the other way around the bush, it still gets you to where, if those assets are sufficient to cover the judgment and the costs, that gets you to where you need to be. Your Honor, I totally understand your question. But to go to another one of our arguments, if I may on that, in 2008 there was an amendment. Okay? So that's post Paisos. Okay? So that's post. And there's been debate, obviously, here. Appellants say the amendment served no purpose. It was just basically for naught. We say that's not right. That's not how you interpret statutes. They're not superfluous. There has to be a purpose for the amendment. Now, there's something very interesting about, you know, if you look at the statute, and we cited, you know, the gurus in, you know, collections, right, have written and said, well, this is. . . Bob's office changed his mind on this. I actually talked to him a couple months ago when he was out fishing in Wisconsin. He agrees with me. He agrees with me. He does. I talked to him a couple months ago, and he goes, of course that's why we did this. This is why we did it. So he does agree with this, at least when I caught him fishing like about six months ago. So let me say, I think there's something very interesting, and I will say, this came out when I was looking at it just to prepare for this argument. If you look at the language in the amendment, okay, it talks about the corporate judgment that is property. Okay? Now, what's very interesting here is that if you look at the preamendment language, okay, it says that you can go after the assets when those assets are held under such circumstances that in an action by the judgment debtor, he or she could recover them. So preamendment, the language is a judgment creditor can go after the assets of the judgment debtor if the judgment debtor could do that as well. Okay, that was But the corporation doesn't re-avail a person's cash. That is exactly right, Your Honor. So what happened in 2007, okay, in a case of first impression, and Your Honor, this I just came about a couple days ago as I was in the case of Samandi v. Estes, 374 Illett 3rd 468. Could you repeat that again? Sure. Samandi v. Estes, S-E-M-A-N-D-E v. Estes, 374 Illett 3rd 468. In that case, which the third district said was a case of first impression, the court considered whether an owner of a business could pierce the corporate veil to get at the assets of a majority shareholder. Okay, and it was the first, a case of first impression is whether a corporation or a shareholder could pierce its own veil. Okay, and that was solely based on failure to follow corporate formalities. The third district said, no, you cannot do it. The next year this amendment came out. So I believe that this amendment, and the language in here, if you look at it, because it only is limited to a corporate judgment debtor, I believe that this amendment was intended to circumvent an argument that might be brought by, you know, people like the appellants, that you cannot, in a supplemental proceeding, pierce the corporate veil because the judgment debtor can't do that itself. Okay, and that's what I think this language means. So regardless of how we read Pichos, and to read it that way and kind of disregard every other case that says you can, you know, get at the assets, regardless, that amendment, and this is what Markoff said in his article, said it when he was fishing, and it's consistent with the fact that in June of 2007 there was this third district case, a first impression that said you cannot, a shareholder or a corporation cannot pierce its own veil. And so I think that was a correct fact. And if you look at the judge's ruling, Your Honors, Judge Meyerson has example after example after example after example of the appellants taking money out of this company for personal matters that did not involve the operation of PNS. And she does it, talks about it over and over and over and over and over. $300,000 loan, you know, a yacht, this, that, and it all adds up from what came out. And I think she believed there was much more beyond that. Can you address, because I know the time is ticking down, the fee argument, that the language of the ordinance limits fees to enforcing the complaint and the judicial review thereof? Yes. Well, it says at any stage of the judicial review, but the judicial review is, you know, you can seek attorney's fees, and it says it specifically in the ordinance, that you can seek attorney's fees at the commission or in the circuit court. Judicial review is never used in a very, like counsel said, and I wrote it down, the ordinance says, in the reviewing court, reviewing the order. It doesn't say that. It says, and I think, Justice Breyer, you've pointed out things. The commission or any stage of judicial review. Yes, it doesn't say reviewing the order. And the statute also says that it's intended, the ordinance says, to make the plaintiff whole. Okay? And it has a myriad of different, you know, aspects to that. Now, other courts have already, have followed suit on this, which we cited to in our briefs, but you look at the Seventh Circuit, and they've addressed this, and I cited to Posner extensively, and I think, Judge McGraw, you said it would be a paper, essentially a paper victory. This is a civil rights, in the nature of a civil rights claim, okay, where the courts have provided for fee shifting. It's not a contract. It's not a contract. It's a civil rights case where the courts are saying, we want to make sure that these people get their money. And counsel said at one point, I thought it was quite telling, he's like, well, the judge should have figured out, essentially, when she should leave or give up the fight. If people like me, okay, and this is a lot of money that went into this case right now, with interest and all these things, we're at $1.2 million. Okay, this is what they've rung up. If people that do what I do just gave up, okay, there would be no more cases brought by people because people like the appellants would know, let's just run them ragged, and they're just going to go away. Okay, let's just run them ragged. And so we stayed in here, and we did fight. But you look at the decisions from the Seventh Circuit and the Northern District of Illinois, and in these cases, the courts say that that is the purpose and the spirit of these attorney's fees provisions. And Judge Posner said sometimes getting the judgment is the easy part. The hard part is getting the money. And so there's nothing in this that curtails it. It says any stage of the judicial review. Judicial review can include, once it goes to the circuit court, that's judicial review. It can include an award of attorney's fees. We already had that. We got the attorney's fees years ago for the very first round. You know, the very first round. We went up on appeal and came back the first time. We came up here. We got the attorney's fees in the reviewing court. So it's not limited to just reviewing the opinion. And that's not, with all due respect to all of you, that really is not to interpret this type of a provision so narrowly so that people can't ever get what they fought for based on a violation of a civil rights action like this. We presented evidence at the trial where they were saying they wanted to hire young, good-looking women that didn't have kids. They didn't want any burdens. This all came out at the trial. And to allow them to put her through all this and, frankly, me representing her, because she can't afford this, to try to get her to the end and to narrowly interpret when the federal courts have looked at the same kinds of statutes and said that would defeat the whole purpose. And when you have a statute that says we're going to make you whole, you're made whole by getting your whole damage, which includes the attorney's fees that you have to incur. So I do ask, I mean, this is obviously important for anybody that does this kind of work. It's not a contract between two companies like an appellant's counsel might be used to. These are civil rights cases, and this ordinance involves race, gender, all types of protected characteristics. And you know we briefed all the other issues, and I hope that answers all your questions on this. And we really appreciate, it's obvious, a lot of time went into it, and we really appreciate all your review of this. Thank you very much. Okay. Thank you. Any additional questions? No? No. Okay. Thank you very much. Rebuttal, counsel? Thank you, Your Honors. I get it that appellees don't like the American rule. I get it that they don't like 214.02, which does not allow for attorney's fees. I understand the concept of a paper judgment. Every judgment, the fact of the matter, however, is every judgment is a paper judgment until it is collected the proper way. And here we've got basically an attempt to evade the collection processes of 214.02, evade the statutory prescriptions, limitations on attorney's fees, to blow up a $310,000 judgment into a million-dollar judgment. Counsel, continue. Well, that would have been in the control of your clients. They could have just paid the judgment, right? In Dunes, if you're talking about P&S, P&S clearly didn't have the assets. That's the judgment debt. Well, we have an adjudication that assets, at least in part, were improperly transferred to your clients. That's the state of the case as it is today. Well, Your Honor, in that regard, and I'm glad you brought it up, because if you look at the amended counterclaim where it talks about dissipated assets in the findings, if there were dissipated assets, there's a fine, that's a violation of the citation, right? In our appellant's order of citation response, the remedy for that is to hold a contempt of court for violating the citation. There's no such finding by the trial court below in that regard. But the finding that there's dissipating assets, so you've got a remedy for that. You've got a violation of the citation, and also you can trace the assets and say, hey, here are assets in the corporation. Counsel urges this as an alternative basis for affirmation. She said, we proved too much. We proved the greater, not the lesser. Not at all. We just affirmed. They tried to prove the more general. If you could show that the assets of P&S were used to buy a yacht, what you do is you go attach the yacht and you ask for a turnover order. That's not what happened here. That's an identifiable asset that belongs to the judgment creditor. They wanted more. If you look at the amended counterclaim, all you've got to do is look at the prayer for relief. We want them to satisfy, not turnover a yacht or a car that they bought or anything else. We want all of these three doctors, we want all of their individual assets, jointly and separately, to be used to satisfy this judgment. They're talking, respectfully, we're kind of talking out of two sides of our mouths when we're talking about what the amended counterclaim is looking for. They have remedies. They chose not to do those. Now they're doing them now. They've basically conceded here today that what they're doing in citation proceedings now is what they could have done all along, and gone and gotten identifiable assets of the corporation that were in the hands of individuals. As far as the cases that they attempt to distinguish, and I think Justice Johnson was dead on with this, every single one of them involves an allegation that, hey, this citation respondent has assets of the judgment debtor. Not that they are the judgment debtor, but they have assets. So we're going to issue a judgment against that for the assets they have. That's O'Connell, that's the federal insurance, that's the Gulfwood. Turn it over. There's no fee award in that regard. So all of those are distinguishable. The judicial review argument, I think, again, respectfully, is sophistry. This is not just any old civil rights statute, right, like 1988A, which says any fees incurred in enforcing the judgment are recoverable. This is the most circumscribed statute on attorney's fees that you can have. It is absolutely specific. It contains no general language like about enforcement. It says pursuing the complaint. In fact, if you look at the prior orders on attorney's fees, the initial attorney fee award, the commission said, we're excising these particular attorney's fees because they weren't incurred in pursuing the complaint. They weren't related to pursuing the complaint. So even the commission settled on a very circumscribed interpretation of its own statute. And as far as the reviewing court goes, what can I say other than the plain language? Legislatures are presumed to know what they're talking about. If they had wanted it to read like ERISA, they would have drafted it like ERISA. If they wanted it to read like the Civil Rights Act of 1967, they would have drafted it to read that. They didn't. In fact, instead they crafted the most narrowly crafted statute on attorney's fees that I think that you could do. So the federal precedent is neither controlling nor persuasive. It's comparing apples and oranges. That's all I have.  Any questions? Thank you. Thank you very much. We will take your arguments under advice.